# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

AARON ESEI,

Petitioner,

v.

KRISTI NOEM, et al,

Respondents.

Case No.:  26-cv-0588-BJC-SBC

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

Pending before the Court is Petitioner Aaron Esei's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). ECF No. 1. Respondents filed a response to the Petition.  ECF No. 6.  Petitioner filed a Traverse. ECF No. 7. For the reasons set forth below, the Petition is **GRANTED.**

## I.    BACKGROUND

Petitioner is a native and citizen of Eritrea who entered the United States in March 2018. ECF No. 1 at 3.  Upon his entry to the U.S., Petitioner applied for asylum and was sent to Otay Detention Center. *Id.* 3-4.  On September 18, 2018, an immigration judge entered a final order of removal. *Id.* After one year and two months of detention, the government released Petitioner on an order of supervision with an ankle monitor. *Id.* at 4. Petitioner moved to Austin, Texas to be closer to fellow immigrants and checked in monthly with an ICE officer.  *Id.* In June 2020, Petitioner was again detained and was told he would be deported to Eritrea.  He was detained for ten months in a San Antonio detention facility.  Declaration, Exhibit A, ¶ 6.  ECF No. 1.  In January, 2021, Petitioner was again

1

released and given an ankle monitor. *Id.* ¶ 7. In 2025, Petitioner married an American woman, and he began working as a medical transportation driver, driving people to and from appointments. *Id.* ¶ 9

On September 26, 2025, Petitioner was re-arrested when he stopped in a parking lot to eat lunch in his car while working as a medical transportation driver. *Id.* Petitioner was detained for one month in Texas and was then moved to Imperial Regional Detention Facility in California, where he remains detained. *Id.* at 4. In his Petition, Petitioner contends that ICE failed to follow its own regulations and that immigration statutes do not authorize the government to detain immigrants like him whose removal period has ended, and for whom there is "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Petitioner requests that the Court order Petitioner's release and enjoin removal to a third country without adequate notice. TRO at 2, ECF No. 2.

For the following reasons, the Court **GRANTS** the Petition.

## I. <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## II. <u>DISCUSSION</u>

### A. <u>Procedural Safeguards</u>

A federal agency must follow its own regulations and procedures. *See Morton v. Ruiz,*

26-cv-0588-BJC-SBC

415 U.S. 199, 235 (1974). The revocation of release of noncitizens subject to a final removal order is governed by 8 C.F.R. §§ 241.4 and 241.13. To revoke an alien's release under section 241.13(i)(2), ICE is required to determine that the alien is significantly likely to be removed in the reasonably foreseeable future "on account of changed circumstances." § 241.13(i)(2). Upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4, 241.13; *see also Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *4 (S.D. Cal. Oct. 10, 2025) (Listing cases that held "§ 241.4(l)(1)'s procedural requirements apply equally to revocation of a noncitizen's release pursuant to § 241.4(l)(2).").

Here, Petitioner was re-arrested on September 26, 2025, and was given no notice about the reason for detention. Dec. ¶11.  Respondents did not give Petitioner an "informal interview." *Id* ¶ 12.  For these reasons, the Court finds Respondents failed to comply with statutory process and violated Petitioner's due process rights when revoking Petitioner's release.

### B. Detention Under 8 U.S.C. § 1231

Section 1231 governs the arrest and detention of noncitizens subject to a final removal order.  *See* 8 U.S.C. § 1231.  It directs the Attorney General to effectuate removal "within a period of 90 days," known as the "removal period," during which detention is authorized. § 1231(a)(1)–(2). In *Zadvydas*, the Supreme Court clarified that detention beyond the removal period is presumptively lawful for up to six months; after that, a noncitizen may make a prima facie case for relief by sharing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," at which point the burden shifts to "the Government [to] respond with evidence sufficient to rebut that showing." 533 U.S. at 701. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the alien's

26-cv-0588-BJC-SBC

release may be conditioned on any of the various forms of conditioned release, including an order of supervised release. *Id.* at 700.

The Court finds that Petitioner has satisfied his burden under *Zadvydas*. Petitioner was ordered removed on September 18, 2018, and the six-month presumptive detention period expired long ago. Petitioner has presented evidence that removal to Eritrea is uncertain. Indeed, Petitioner has twice been detained before the current detention, and has twice been released on conditions of supervision because removal to Eritrea could not be effectuated.

In addition, there is no significant likelihood Petitioner may be removed to Eritrea in the reasonably foreseeable future.  According to Respondents, on October 21, 2025, ICE submitted a travel document request (TDR) for approval. Declaration of Concepcion Arredondo, ECF 5-1 at ¶ 17. Officer Arredondo states:

> On November 12, 2025, RIO informed ICE that the travel document was pending approval and issuance from the Embassy of the State of Eritrea.  On December 1, 2025, RIO informed ICE that Petitioner may be removed with a Certificate of Identity document. ICE then scheduled a tentative flight for removal on December 15, 2025, which was later changed to January 7, 2026. On December 16, 2025, ICE cancelled the flight on January 7, 2026, after learning that airlines would not authorize Petitioner to board a flight with a Certificate of Identity document. On December 16, 2025 and January 9, 2026, ICE submitted requests to RIO for updates on the issuance of the travel document. On January 17, 2026, RIO informed ICE that follow up requests were submitted to the Embassy of the State of Eritrea on December 22, 2025 and January 5, 2026. ICE anticipates a travel document will be issued soon. Once ICE receives a travel document for Petitioner, his removal can be effectuated promptly.

ECF No. 5-1 ¶¶ 18-23.

This statement was made on February 13, 2026, and yet, as of April 23, 2026, no travel documents have been secured for Petitioner. This underscores the uncertainty and unlikely possibility that removal to Eritrea may be accomplished in the near future.  *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1081–82 (9th Cir. 2006) (holding that the

26-cv-0588-BJC-SBC

government lacked authority to detain an individual indefinitely under § 1231 where removal was not reasonably foreseeable despite ongoing diplomatic efforts). Accordingly, Respondents have not demonstrated that Petitioner's removal is significantly likely in the reasonably foreseeable future, as required under *Zadvydas*, 533 U.S. at 701

### III.    CONCLUSION AND ORDER

Accordingly, the Court **GRANTS** the petition for writ of habeas corpus and **ORDERS** as follows:

1. Respondents are **ORDERED** to immediately release Petitioner from the Otay Mesa Detention Center on the same conditions as previously contained in his order of supervision.

2. Respondents are **ENJOINED** from re-detaining Petitioner under 8 U.S.C. 1231 until they have obtained valid travel documents necessary for Petitioner's removal.

3. Respondents are **ENJOINED** from re-detaining Petitioner without first following all procedures set forth in 8 C.F.R. §§ 241.4(l) and 241.13(i).

4. Respondents are **ENJOINED** from removing Petitioner unless the following process is provided:

   (a) written notice to both Petitioner and Petitioner's counsel in a language Petitioner can understand;

   (b) a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for CAT protection prior to removal;

   (c) if Petitioner is found to have demonstrated "reasonable fear" of removal to the country, Respondents must follow procedures and reopen Petitioner's immigration proceedings

**IT IS SO ORDERED**.

Dated: April 23, 2026

_____

Honorable Benjamin J. Cheeks
United States District Judge

5

26-cv-0588-BJC-SBC